Carla LINK, Plaintiff-Appellant,

v.

GENERAL CASUALTY CO. OF WISCONSIN, Defendant-
Respondent.

Court of Appeals

*No. 93–2734. Submitted on briefs April 15, 1994.—Decided
May 3, 1994.*

(Also reported in 518 N.W.2d 261.)

394

395

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ardell W. Skow* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Theodore A. Franti,* of *Thrasher, Doyle, Pelish & Franti, Ltd.,* of Rice Lake.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Carla Link appeals a summary judgment granted in favor of General Casualty Co. of

Wisconsin. Link argues that she is entitled to underinsured motorist (UIM) coverage for the negligence of the driver of the other car involved in the accident, and the trial court erred by concluding that the definition of "underinsured motor vehicle" precludes coverage. Because the language of the contract is unambiguous and the insurance contract is not illusory, we affirm the judgment on this issue.

Link also argues that the motorcycle on which she was a passenger was an underinsured motor vehicle, and she is therefore entitled to UIM coverage provided in two policies covering two of Link's vehicles that were not involved in the accident. Link contends that the trial court erred when it concluded that the drive-other-car exclusion and the exclusion in the underinsured motorist definition precluded such coverage. We conclude that the drive-other-car exclusion and a similar definitional exclusion in Link's policies are invalid, and therefore reverse on this issue.

Carla Link was injured when the motorcycle her husband was driving and on which she was a passenger was struck by an automobile driven by Jennifer Reitz. The Reitz vehicle carried a policy with a $100,000 liability limit. Link has settled with the liability carrier for the full $100,000. The motorcycle, owned by Link's husband, carried a policy with a liability limit of $25,000.

Because the injuries Link suffered as a result of this accident are alleged to exceed the available liability coverage, Link made an underinsured motorist claim against General Casualty for coverage under two separate policies issued to Link and her husband for two vehicles not involved in this accident. Each of these nonaccident vehicles carry UIM coverage with limits of $100,000 for each person and $300,000 for each acci-

dent. There are two distinct issues: (1) Is the Reitz vehicle an underinsured motor vehicle under Link's policies; and (2) is the motorcycle an underinsured motor vehicle under Link's policies?

A motion for summary judgment can be used to address issues of insurance policy coverage. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). The record here reveals that there is no material issue of disputed fact. The only issue is the legal question concerning the validity of the definition of "underinsured motor vehicle" and the drive-other-car exclusion in the General Casualty policies. The interpretation of an insurance contract presents a question of law. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). When reviewing a summary judgment determination, we will reverse where the trial court has incorrectly decided a legal issue. *Germanotta*, 119 Wis. 2d at 297, 349 N.W.2d at 735.

## THE UNDERINSURED MOTOR VEHICLE DEFINITION

Link contends that although the Reitz vehicle is not an underinsured motor vehicle under the plain language of the contract, she is entitled to UIM coverage because the language renders the contract illusory and is, therefore, invalid. We do not agree. The contract states: " 'Underinsured motor vehicle' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage."

Insurance contracts are controlled by the same rules of construction as are applied to other contracts. *Ehlers v. Colonial Penn Ins. Co.*, 81 Wis. 2d 64, 74, 259 N.W.2d 718, 724 (1977). Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer. *Davison v. Wilson*, 71 Wis. 2d 630, 635-36, 239 N.W.2d 38, 41 (1976). Words and phrases are ambiguous when they are susceptible to more than one reasonable construction. However, when an insurance policy's terms are plain on their face, the policy must not be rewritten by construction. *Limpert v. Smith*, 56 Wis. 2d 632, 640, 203 N.W.2d 29, 33-34 (1973).

We agree with the trial court that the definition of underinsured motor vehicle is unambiguous. Under this definition, the Reitz vehicle is not an underinsured motor vehicle because the liability limit in the applicable policy ($100,000) is equal to, not less than, the limit of UIM coverage provided in Link's policies. These facts are the same as in *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990). In *Smith*, Smith's policy with Atlantic Mutual contained, substantively, the same definition of underinsured motor vehicle as Link's policy. *Id.* at 811, 456 N.W.2d at 599. Because the liability limits on the other car involved in the accident, Goulias' vehicle, were the same as Smith's UIM coverage, "under the clear terms of the policy, Goulias' vehicle is not an underinsured motor vehicle, and Atlantic Mutual need not provide coverage." *Id.*

Link contends, however, that we cannot strictly construe the definition of underinsured motor vehicle, as the supreme court did in *Smith*, because to do so would render the insurance contract illusory. Link cites *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 500

N.W.2d 354 (Ct. App. 1993), and *Kuhn v. Allstate Ins. Co.*, 181 Wis. 2d 453, 510 N.W.2d 826 (Ct. App. 1993), to support her contention. This case is distinguishable from *Hoglund* and *Kuhn*. Thus, just as the supreme court in *Smith*, "[w]e are unpersuaded" by the illusory contract argument. *See Smith*, 155 Wis. 2d at 813, 456 N.W.2d at 600.

In *Hoglund*, the policy provided by Secura Insurance had, essentially, the same definition of underinsured motor vehicle as does the General Casualty policy in this case. While we concluded in *Hoglund* that the definition language was unambiguous, we went on to conclude that the definition rendered the contract illusory, and was thereby invalid. In *Hoglund*, we adopted the definition of illusory contract from Indiana case law which stated that under an illusory contract, "a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances." *Id.* at 271-72, 500 N.W.2d at 357, *quoted in Meridian Mut. Ins. Co. v. Richie*, 540 N.E.2d 27, 30 (Ind. 1989). In *Hoglund*, the UIM coverage was only $25,000: When combined with § 344.33, STATS., requiring holders of liability insurance to have minimum of $25,000 coverage, there was no circumstance in which the insured could collect under the UIM provision and it was therefore illusory. While the definition in the General Casualty policy precludes Link from collecting under the UIM provision in this instance, it is not the case that she can under no circumstance collect under the UIM coverage provision,[1] therefore *Hoglund* does not apply to the facts presented here.

---

[1] For example, if Reitz had only carried $50,000 liability insurance, then Link would be able to collect under the UIM provisions.

In *Kuhn*, we took *Hoglund* one step further. While the definition of underinsured motor vehicle was met under the facts in *Kuhn*, a reducing clause reduced the UIM coverage limit by amounts paid on or behalf of the owner or operator of the underinsured motor vehicle. *Kuhn*, 181 Wis. 2d at 462, 510 N.W.2d at 830-31. We concluded in *Kuhn* that the reducing clause rendered the contract illusory because, while the insured can collect part of the stated UIM coverage, he or she will never collect the full amount; when combined with § 344.33, STATS., the reducing clause would always reduce the UIM limit by at least $25,000. Here we are dealing with a definition, not a reducing clause. If the definition is met, absent a reducing clause, the insured will receive the full amount of stated coverage. It is the reducing clause, not the definition, that prevents the insured from ever collecting the full amount of stated coverage. The definition in General Casualty's policy does not deny the insured from collecting the full amount of UIM coverage purchased in all situations. Thus, *Kuhn* does not apply to the facts here either.[2]

Accordingly, because there are circumstances that can be reasonably foreseen by the insured in which she would collect under the General Casualty UIM coverage provision, the contract is not illusory. Because Reitz's vehicle is not an underinsured motor vehicle as unambiguously defined in the policy, summary judg-

---

[2] It should be noted that if the Reitz vehicle had met the definition of an underinsured motor vehicle, then *Kuhn v. Allstate Ins. Co.*, 181 Wis. 2d 453, 510 N.W.2d 826 (Ct. App. 1993), would apply in analyzing the validity of the reducing clause in the General Casualty policy. However, because the definition is not met, the reducing clause is not at issue here.

ment was properly granted in favor of General Casualty on this issue.

## THE DRIVE-OTHER-CAR EXCLUSION

Link next argues that under *Rodey by Richardson v. Stoner*, 180 Wis. 2d 309, 509 N.W.2d 316 (Ct. App. 1993), decided after the trial court granted summary judgment, the drive-other-car exclusion and the similar definitional exclusion are invalid. As a result, Link argues, the motorcycle on which Link was a passenger is an underinsured motor vehicle upon which she can collect the UIM coverage provided for in her General Casualty policies. We agree.

As with *Rodey*, this case hinges on the interplay between the General Casualty policies, specifically the drive-other-car exclusion and the similar definitional exclusion, and § 631.43, STATS. Section 631.43 states in part:

> **(1) General.** When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

The definition of "underinsured motor vehicle" under the policy states that an underinsured motor vehicle does not include any vehicle "owned or furnished or available for the regular use of you or any 'family member.'" The motorcycle falls within this exclusion. The drive-other-car exclusion states in part:

> A. We do not provide Underinsured Motorist Coverage for bodily injury sustained by any person:

1.  While "occupying" or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy.

*Rodey* is directly on point. Rodey was an insured under four policies covering vehicles that were not involved in the accident. The policies contained a definitional exclusion and a coverage exclusion effectively the same as the ones involved here. This court concluded that because there were two or more policies promising to indemnify Rodey against the same loss, albeit none of the policies covered the accident vehicle, the drive-other-car exclusion and the underinsured motor vehicle definition were invalid under § 631.43, STATS. *Rodey,* 180 Wis. 2d at 318, 509 N.W.2d at 320. Similarly, because there are two policies providing Link with the same UIM coverage, i.e., two policies promising to indemnify Link against the same loss, the drive-other-car exclusion and the definitional exclusion are invalid under § 631.43. Because we detailed the history leading to this conclusion in *Rodey*, it is unnecessary to repeat it here.

General Casualty contends that *Schwochert v. American Fam. Mut. Ins. Co.*, 172 Wis. 2d 628, 494 N.W.2d 201 (1993), controls. *Schwochert* is distinguished from this case for the same reasons as it was in *Rodey*: In *Schwochert*, there was only one vehicle with UIM coverage, that is, there were not two policies promising to indemnify the insured against the same loss. *Schwochert,* 172 Wis. 2d at 635, 494 N.W.2d at 203. Here there are two policies promising to indemnify Link against damages caused by an underinsured motorist, therefore § 631.43, STATS., applies. Consequently, the definition excluding any vehicle owned or

available to Link or any of her family members, and the drive-other-car exclusion are invalid and do not preclude Link from UIM coverage under the policy. This cause is therefore remanded for further proceedings.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings. No costs on appeal.