QUEEN INSURANCE COMPANY OF AMERICA, Appellant, v. KAISER and others, d/b/a KAISER BUILDING MANAGEMENT COMPANY, Respondents.

*April 27—June 1, 1965.*

For the appellant there was a brief by *Kivett & Kasdorf,* attorneys, and *James G. Forester* of counsel, all of Milwaukee, and oral argument by *Mr. Forester.*

For the respondents there was a brief by *Kenneth M. Kenney* and *Wolfe, O'Leary, Kenney & Wolfe,* all of Milwaukee, and oral argument by *Kenneth M. Kenney.*

BEILFUSS, J.  The issue is—do the terms of the exculpatory clause of the lease exonerate the lessor from liability for damages sustained by the lessee and caused by the negligence of the lessor.

It is conceded that the plaintiff insurer cannot recover under its subrogation agreement unless its insured (tenant Bruner) had a right to recovery. *Frederick v. Great Northern R. Co.* (1932), 207 Wis. 234, 240 N. W. 387, 241 N. W. 363.

The legality of an exculpatory clause has not been challenged by the plaintiff.

"The basis upon which the courts have upheld the validity of exculpatory clauses in lease contracts has been the broad ground of public policy and the freedom of contract guaranteed by the federal and state constitutions.  More specifically, it has been held that the landlord and tenant relationship is not a matter of public interest, but relates exclusively to the private affairs of the parties concerned and that the two parties stand upon equal terms, . . ."  Anno. 175 A. L. R. 8, 86.  See also, in general, Annos. 84 A. L. R. 654; 26 A. L. R. (2d) 1044, secs. 11, 13, 14, 15.

The plaintiff-appellant contends the exculpatory clause should be strictly construed against nonliability and thus construed, the terms of the lease do not exonerate the lessor from liability under the facts of the case.  The argument is that the water pipes froze and burst in an area not leased

by Bruner and over which Bruner had no control, and that the parties did not intend that the lessor should be relieved from liability caused by the negligent acts of the employees of the lessor.

In *Johnson v. Prange-Geussenhainer Co.* (1942), 240 Wis. 363, 375, 2 N. W. (2d) 723, it is stated:

". . . the rule of strict construction cannot be used as an instrument for defeating the clear intention of the parties."

It is clear that this exculpatory clause was intended to limit the liability of the lessor. Clauses of this kind are not uncommon and are a proper subject of the bargain of the parties.

As stated in *Lerner v. Heicklen* (1926), 89 Pa. Super. 234, 236:

"It is not unreasonable to assume that the consideration that induces a tenant to enter into such a covenant is the fixing of a lower rental for the demised property than would otherwise be demanded by the lessor. Upon this matter the parties may bargain freely and agree upon their own terms. The covenant in question contravenes no policy of the law."

The clause may be broken down to four parts: (1) "Lessor shall not be liable for any damage occasioned by failure to keep said premises in repair;" (2) "and shall not be liable for any damage done or occasioned by or from plumbing, gas, water, steam or other pipes, or sewerage, or the bursting, leaking or running of any cistern, tank, washstand, water-closet, or waste-pipe in, above, upon or about said building or premises;" (3) "nor for damage occasioned by water, snow or ice being upon or coming through the roof, sky-light, trap door or otherwise;" (4) "or for any damage arising from the acts or neglect of co-tenants or other occupants of the same building."

The clause read as a whole expresses a broad intention to limit the liability of the lessor. The second part contains

the most-significant limitation under the facts of this case. This portion of the clause provides that the lessor shall not be liable for damage caused by or from plumbing, water, or other pipes "in, above, upon or about said building or premises." The language "in, above, upon or about said building or premises" is very broad and inclusive. We conclude that the parties did not intend to limit exculpation from liability to damage originating within the physical limits of building 1-A. The fact that Bruner obtained insurance to protect itself against this kind of loss is evidence of the intention of the parties.

*Moroder v. Fox* (1914), 155 Wis. 503, 143 N. W. 1040, cited by the plaintiff, must be distinguished on its facts. In that case lessee rented the first floor. The lease provided the lessee had the affirmative to take all necessary steps to prevent damage and to pay any damages occasioned by its failure. The clause under consideration here is one to release the lessor from liability. In *Moroder* the court held that the lessee had no right of access to the second floor and could not be held liable for failures originating from that source. The clause before us relieves the lessor of liability; in *Moroder* it created affirmative duties on the part of the lessee.

The plaintiff submits that the clause does not specifically relieve the lessor from liability occasioned by the negligence of the lessor or its employees.

The trial court stated in its memorandum opinion filed herein:

"It is said in 32 Am. Jur., 616, Landlord and Tenant, sec. 739:
" 'It is generally held that a provision exempting the landlord from liability on account of the condition of the premises does not apply where the damage sustained is the result of active negligence on the part of the landlord, although such provision may apply where the negligence charged is

purely passive in its nature and is founded on the omission to correct leaks. It has been held that a covenant in a lease exempting the landlord from all liability for any and all damage caused by water, gas, etc., includes liability for acts of negligence.'

"Active and passive negligence have been defined in 65 C. J. S., 322, Negligence, sec. 1 (e), as follows:

" '. . . "active negligence," . . . , denotes some positive act or some failure in a duty of operation which is the equivalent of a positive act, and "passive negligence" the failure to do something that should have been done.'

"Under the rule adhered to in this state, passive negligence, as distinct from active or affirmative negligence, is insufficient to nullify an otherwise valid exculpatory clause in a lease. . . ."

The parties agree that the negligence of Landwehr, Kaiser's employee, was passive and not active negligence.

We agree with the trial court that the negligence of Landwehr was only an inadvertent act of omission and, as such, passive negligence. We further agree that passive negligence, as distinguished from active negligence,[1] will not invalidate the exculpatory clause of the lease under consideration, and that Kaiser was not liable to Bruner for damages caused by the broken pipe.

Because we have determined that the exculpatory clause relieves Kaiser from liability, we deem it unnecessary to consider Kaiser's motion to review the negligence finding.

*By the Court.*—Judgment affirmed.

[1] *Johnson v. Prange-Geussenhainer Co., supra.*